THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ADA TURNER, Defendant-Appellant.

First District (5th Division)    No. 79-1071

Opinion filed September 19, 1980.

James J. Doherty, Public Defender, of Chicago (Marc Fogelberg, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Armand L. Andry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant was convicted of voluntary manslaughter (Ill. Rev. Stat. 1975, ch. 38, par. 9—2) and sentenced to five years probation with the first 348 days to be served as periodic imprisonment. At the conclusion of the State's evidence, defendant was found temporarily unfit to stand trial, and the trial court suspended the trial until defendant was found fit. Defendant was found fit to stand trial approximately two months later, and the trial resumed. On appeal, defendant contends that the trial court erred in not granting a mistrial when defendant was found unfit during the course of the trial.

A summary of the pertinent evidence offered by the State follows.

On July 21, 1976, Le Ann Gillian, next door neighbor to defendant, was on her front porch at 8:45 p.m. She saw Larry Dobbs drive up to the house to meet her sister, whom he was dating. Dobbs came up to the front porch, and she told him that her sister was not home. He walked back to his car for a moment and then began to return to the porch. As he started back, he waved his arm at the defendant who was in front of her house. Defendant then uttered a series of profanities at Dobbs, and Dobbs entered into a loud argument with defendant. Dobbs stepped into the driveway to defendant's house and began arguing with defendant's mother who had come out of the house. Gillian walked from the porch to where Dobbs was standing in the driveway and she asked Dobbs twice to come inside, but he refused. During the argument defendant stepped inside the house for a moment and then out. Defendant walked to within nine feet of the group in the driveway. At that point, without warning, she removed a gun from her blouse and shot Dobbs twice. Dobbs had made no movement toward defendant as she approached the group. Prior to this day, Gillian had never seen Dobbs speak to defendant.

After defendant shot Dobbs, she warned Gillian not to say anything to her. Gillian ran to her neighbor, Willie Gibson, who phoned the police. Gibson, who lived two doors from defendant, heard the argument between Dobbs and defendant and also the gun shots. She did not, however, see the shooting.

The State rested its case at this point and defendant asked for a continuance from Friday, April 12, 1978, to Monday, April 15, 1978. On April 15, 1978, defendant, who was free on bond, failed to appear in court. The case was continued until Wednesday. On Wednesday, defendant did appear and her counsel requested a behavioral clinic examination to determine defendant's fitness to stand trial. Defense counsel stated that defendant refused to cooperate with him in preparing her defense. Defense counsel explained that his problems with his client had only manifested themselves since Friday's continuance. Defendant told the court she was not crazy but only wanted a new attorney. She also said that her attorneys had been treating her as if she was crazy, and that she had attempted to commit suicide. As the argument before the trial court continued, defendant, without a word to anyone, left the courtroom. The trial court continued the case until Thursday, and on that day he ordered a behavioral clinic examination for defendant.

On July 11, 1978, a hearing was held to determine defendant's fitness to stand trial pursuant to section 5—2—1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1(c)). Dr. Robert Reifman, a psychiatrist, examined defendant on May 23, 1978, and June 27, 1978. His diagnosis after each examination was that defendant was unfit to stand trial. Dr. Reifman stated she was unable to cooperate with her attorney.

Further, defendant had a mental condition characterized as paranoid with delusions of persecutions and was in need of mental treatment.

On June 6 and June 13, 1978, defendant was examined by another psychiatrist, Dr. Frank Lorrimer. Dr. Lorrimer concluded that defendant was fit to stand trial. In his opinion, defendant was an obstructionist which he defined as a person with personality characteristics of stubbornness and insufficiency which are developed over a number of years. Based upon the testimony of both psychiatrists and his own observations of defendant, the trial court found defendant temporarily unfit to stand trial. The trial court continued the case until the time when defendant would be fit to stand trial. No testimony was given or express ruling made on defendant's competence to have stood trial during the presentation of the State's evidence on April 12, 1978.

On September 20, 1978, a hearing was held to determine if defendant was now fit to stand trial. Dr. John Nelson examined defendant on September 8 and September 19, 1978, and concluded that defendant was now fit to stand trial. The parties stipulated that Dennis Dee, a psychologist, examined defendant and found her fit to stand trial. This conclusion was also reached by Dr. Werner Tuteur who examined defendant on September 7, 1978, and September 19, 1978. Dr. William Marinas also examined defendant on September 7, but he found her unfit to stand trial. According to Dr. Marinas, defendant was angry and distrustful. Based on this examination, he diagnosed defendant's mental condition as paranoid, which was induced by the stress involved in the criminal proceedings against her. A second examination of defendant was conducted by Dr. Marinas on the morning of the September 20 hearing. From this examination, Dr. Marinas concluded that defendant was fit to stand trial. After hearing this evidence, the trial court found defendant fit to stand trial.

Defendant then moved for a mistrial urging two grounds. First, that the delay of the trial from April 12, 1978, to September 20, 1978, impaired the trial court's memory of the testimony already received into evidence. Second, that the trial court's finding of unfitness at the end of the State's case carried a presumption that defendant was unfit during the presentation of the State's case. The trial court in denying both motions displayed an accurate and clear memory of the suspended proceeding.

Defendant then took the stand in her own behalf. On the evening of July 21, 1976, she was at home when Larry Dobbs arrived at Gillian's house. Dobbs was walking from his car to Gillian's house when he began making faces at defendant. Defendant asked him to leave her alone, and Dobbs replied by calling her a whore. An argument followed. As Dobbs began walking up the driveway toward defendant, defendant's mother went out to stop him. Defendant's mother was 61 years old. Dobbs refused to leave the driveway and tried to shove defendant's mother out of the way. As this

occurred, defendant, standing on the porch, entered her house to get a gun, put the gun under her sweater, and came back outside. She walked onto the driveway and Dobbs started to walk toward her. When Dobbs was two feet away, he put his hands in his pockets and refused to leave the driveway. Dobbs stepped toward her again, and she fired the gun at him.

According to defendant, Dobbs had been harassing her for quite some time prior to the shooting. Dobbs would scare her with his car when she tried to cross the street. He was constantly around her house. In addition, he would laugh at her when Le Ann Gillian and her sister called defendant crazy.

Le Ann Gillian testified in rebuttal that she had never harassed defendant nor called her crazy. Moreover, she had never seen Larry Dobbs harass defendant in any manner.

### OPINION

■■ A defendant has a right not to be tried or convicted while incompetent to stand trial. (*Pate v. Robinson* (1966), 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836.) This right is premised on the primary guarantee of the due process clause of the fourteenth amendment that every defendant will receive a fair trial. (U.S. Const., amend. XIV.) The test for competence to stand trial is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." (*Dusky v. United States* (1960), 362 U.S. 402, 4 L. Ed. 2d 824, 80 S. Ct. 788.) Of course, the State must adequately protect this right, and failure to achieve this objective will result in reversal of a defendant's conviction. See *Pate v. Robinson* (1966), 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836.

The Illinois statute in effect at the time of the trial which governs a defendant's fitness to stand trial provides:

"(a) For the purposes of this Section a defendant is unfit to stand trial or be sentenced if, because of a mental or physical condition, he is unable:

(1) to understand the nature and purpose of the proceedings against him; or

(2) to assist in his defense.

＊ ＊ ＊

(c) When a bona fide doubt of the defendant's fitness to stand trial or be sentenced is raised, the court shall order that a determination of that question be made before further proceedings." (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1.)

Whether a bona fide doubt of defendant's competence to stand trial exists is a decision resting largely within the discretion of the trial court. (*People*

*v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) At a fitness hearing, the State has the burden of proving by a preponderance of the evidence that defendant is fit to stand trial. *People v. Bilyew* (1978), 73 Ill. 2d 294, 383 N.E.2d 212.

At trial, defendant argued for a mistrial on two distinct grounds: First, the delay between the original postponement of the trial for a fitness hearing until the trial was actually resumed cast sufficient doubt over the trier of fact's ability to recall the pertinent evidence and a probable loss of the personal and immediate impression caused by the witnesses as to necessitate a mistrial. This problem must be treated differently when the trier of fact is a jury instead of a trial court. The trial court has access to its notes from the trial and, in our opinion would be more likely to admit its inability to recall the evidence than a juror. The second ground involves the defendant's right not to be tried while incompetent, which is essential to a fair trial. The identity of the trier of fact has no bearing on this question. On appeal, defendant relies solely on this latter ground, and our opinion will be limited accordingly.

In the case at bar, the trial court, believing a bona fide doubt of defendant's competence to stand trial existed, conducted a fitness hearing. At the conclusion of the hearing, the trial court found defendant unfit to stand trial. Although the court refused to grant a mistrial in conjunction with its finding of incompetence, no evidence was offered on defendant's fitness to stand trial during the presentation of the State's evidence nor did the trial court direct any inquiry into this area. Instead, the trial court continued the case until that time when defendant would be fit to stand trial. This appeal will decide what course of action a trial court should take when during the course of a trial a defendant is found unfit to stand trial.

As can be seen from a cursory examination of the Illinois statute governing fitness to stand trial in this case (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1), no guidance is given to the trial courts on this question. While the statute directs the trial courts to conduct a fitness hearing when a bona fide doubt of defendant's competence exists, no directive is given as to what action should be taken when a defendant is found unfit during the course of the trial. Although this statute has been recently repealed by Public Act 81-1217, effective December 28, 1979, the new legislation shares the same fault as the old statute. The ultimate choice, of course, is between a mistrial or a continuance of the trial until defendant is found fit.

The United States Supreme Court addressed this question *in dictum* in *Drope v. Missouri* (1975), 420 U.S. 162, 43 L. Ed. 2d 103, 95 S. Ct. 896. In *Drope*, the Supreme Court held that a defendant's right to a fair trial was denied when the trial court did not conduct an inquiry into defendant's fitness to stand trial. As a basis for this conclusion, the Supreme Court relied

on the psychiatric information available before trial, testimony adduced at trial, and defendant's attempt to commit suicide during trial. Following the court's resolution of this issue, the court stated:

> "Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial. Whatever the relationship between mental illness and incompetence to stand trial, in this case the bearing of the former on the latter was sufficiently likely that, in light of the evidence of petitioner's behavior including his suicide attempt, and there being no opportunity without his presence to evaluate that bearing in fact, the correct course was to suspend the trial until such an evaluation could be made. That this *might have aborted the trial* is a hard reality, but we cannot fail to note that such a result might have been avoided by prompt psychiatric examination before trial, when it was sought by petitioner." (Emphasis added.) (*Drope*, 420 U.S. 162, 181-82, 43 L. Ed. 2d 103, 119, 95 S. Ct. 896, 908-09.)

Although the court chose not to explain its comment that a mistrial may result when a defendant is found unfit during the course of a trial, we believe some guidance may be taken from that excerpt.

The State, in its analysis of *Drope*, maintains that the court referred to the possibility of a mistrial because the petitioner was tried before a jury. Thus, according to the State, the court reasoned that the delay between the finding of unfitness and the resumption of the trial would have so impaired the jury's ability as trier of fact as to necessitate a new trial, and also could cause practical problems in acquiring the same jury. We do not agree with the State's interpretation. The entire discussion in *Drope* centered on the defendant's due process right not to be tried while incompetent to stand trial. It was this right which the court found to be violated in *Drope*. No mention was made by the court to the jury's ability to try the case after a continuance during which the defendant was unfit. Thus, we believe the *Drope* court contemplated the granting of a mistrial when a defendant is found unfit during the course of the trial because of the possibility that defendant was unfit from the beginning of the trial.

Additional guidance may be found in *People v. Freyre* (1973), 76 Misc. 2d 210, 348 N.Y.S.2d 845. In *Freyre*, defendant was convicted of murder in 1956. Following the jury's verdict of guilty, the trial court ordered a psychiatric examination of the defendant. The trial court found the defendant to be incompetent for sentencing and committed him to the State hospital for psychiatric treatment. Defendant remained there for 16 years; he was never sentenced. In 1972, defendant was found fit to be sentenced, and defendant then moved to set aside his conviction because

he was incompetent during the trial. Acting on the defendant's motion, the trial court conducted a hearing to determine whether defendant was unfit to stand trial 16 years ago. Because the evidence received at this hearing was conflicting and incomplete due to the passage of time, the trial court could only reach one definite conclusion: defendant was unfit to be sentenced in 1956. From this finding, the trial court stated there was a reasonable inference that defendant's mental incompetence existed prior to the psychiatric examination before sentencing. In short, there was a reasonable inference that defendant was unfit during the trial. Since the State failed to rebut that inference, the court set aside the jury's verdict in 1956. Moreover, the court in *Freyre* observed that the trial court in 1956 having found defendant incompetent to be sentenced, had a *sua sponte* duty to inquire into defendant's mental competence during the trial. Citing *Pate v. Robinson* (1966), 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836, the court concluded that the trial court's failure in 1956 to make a concurrent determination of defendant's fitness during the trial deprived defendant of due process of law.

Once a trial court, during the course of a trial, finds a defendant incompetent to stand trial for the remaining proceedings, there exists a recognizable and not insignificant risk that defendant was incompetent during that portion of the trial already conducted. This risk necessitates a concurrent determination of defendant's fitness during the previous portion of the trial to insure defendant's right to a fair trial. Furthermore, a defendant's right not to be tried or convicted while incompetent must be protected by applicable State criminal procedures and, where necessary, prompt judicial action. Here, the State statute, section 5—2—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1), failed to direct the trial court in this situation to conduct an inquiry into defendant's prior fitness to stand trial. This legislative omission contributed to the denial of due process in this case. Where the State procedures fail to protect adequately the defendant's right in this area, the judiciary may not stand silently to the side. Thus, in this case, the trial court on its own authority should have initiated an inquiry into defendant's mental fitness during the presentation of the State's case. The failure to conduct such an inquiry was a denial of due process. By conducting a hearing at this point in the trial, the trial court simultaneously protects defendant's right to a fair trial and promotes sound judicial administration. We note that this course of action was taken by trial courts in analogous situations in *People v. Rivers* (1978), 61 Ill. App. 3d 376, 377 N.E.2d 1245, and *People v. Hubert* (1977), 51 Ill. App. 3d 394, 366 N.E.2d 909.

The State maintains that there is no risk that defendant was unfit during the presentation of its case, because a behavioral clinic examination was allegedly undertaken before trial, and defendant was found fit. This

contention is not supported by the record. Neither the half-sheet nor the common law record contains evidence that a behavioral examination was conducted before trial or the result of that examination. At trial, the assistant state's attorney did refer to such an examination but did not produce any evidence to support his contention. The trial court had no positive proof that defendant was previously found fit to stand trial, and neither does this court. Assuming, however, that such an examination did take place and defendant was found fit to stand trial, error still exists. Simultaneous with the trial court's determination during the trial that defendant was unfit, it became incumbent upon the trial court to inquire into defendant's fitness to stand trial prior to that point. Failure to fulfill this duty, which protects defendant's right not to be tried while incompetent, was a denial of due process. It must be remembered that the rule of *Pate v. Robinson* (1966), 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836, does not require a finding of defendant's incompetence to stand trial, but rather requires a current determination of that question when sufficient doubt of defendant's fitness exists. In this case, the trial court's finding of unfitness creates that quantum of doubt of defendant's fitness prior to that time which compels further inquiry.

The State also maintains that a mistrial was properly refused by the trial court because defendant failed to show prejudice caused by her being tried when she may have been incompetent. It has long been established that a defendant may not be tried or convicted while incompetent to stand trial. (*Drope v. Missouri* (1975), 420 U.S. 162, 43 L. Ed. 2d 103, 95 S. Ct. 896.) No qualification of provable prejudice has been added to this rule by the Supreme Court. Rather, the Supreme Court has assumed that trial of an incompetent defendant is inherently unfair because the defendant was unable to fully cooperate in his defense. (*Drope*, 420 U.S. 162, 171, 43 L. Ed. 2d 103, 112-13, 95 S. Ct. 896, 903-04.) Consequently, in the present case, if the trial court found defendant incompetent during the presentation of the State's case, defendant need not prove prejudice to receive a mistrial.

Having determined that defendant's right to a fair trial was violated when no inquiry was conducted into her fitness to stand trial during the presentation of the State's case, we must now reverse the defendant's conviction. We reject the option of holding a limited hearing at this time, two years and five months after the trial commenced, to determine *nunc pro tunc* whether defendant was fit to stand trial. The Supreme Court has stressed the inherent difficulties in retrospectively determining defendant's fitness to stand trial and has indicated its lack of confidence in the efficacy of a hearing conducted for this purpose. (See *Drope v. Missouri* (1975), 420 U.S. 162, 43 L. Ed. 2d 103, 95 S. Ct. 896; *Pate v. Robinson* (1966), 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836; and *Dusky v. United States* (1960), 362

U.S. 402, 4 L. Ed. 2d 824, 80 S. Ct. 788.) Consequently, the State is free to retry defendant, provided that if a bona fide doubt of her competence to stand trial exists, a hearing is held to determine defendant's competence. Public Act 81-1217, effective December 28, 1979.

Accordingly, the judgment of the circuit court is reversed and the cause remanded for proceedings not inconsistent with the content of this opinion.

Reversed and remanded.

MEJDA and WILSON, JJ., concur.