**UNITED STATES of America, ex rel. Clarence RIVERS, Petitioner,**

v.

**Gayle M. FRANZEN, et al., Respondents.**

**No. 79C5020.**

United States District Court,
N. D. Illinois, E. D.

Sept. 3, 1981.

James A. Klenk, Mark Sableman, Reuben & Proctor, Chicago, Ill., for petitioner.

Neal B. Goodfriend, Asst. Atty. Gen., Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Petitioner Clarence Rivers ("Rivers") was convicted of murder January 26, 1973 in the Circuit Court of Cook County. After ex-

hausting all available state remedies Rivers brought what is now his Amended Petition for a Writ of Habeas Corpus (the "Petition")[1] alleging that he had been incompetent to stand trial. Respondents have moved for summary judgment as to all four counts of the Petition, and Rivers has filed a cross-motion for summary judgment as to Counts I, III and IV. For the reasons stated in this memorandum opinion and order Rivers' motion is granted as to Count I,[2] respondents' motion is denied and the writ of habeas corpus is issued.

### Facts[3]

Rivers was indicted on charges of first degree murder March 20, 1972. Shortly thereafter the trial court ordered a psychiatric examination to determine Rivers' mental fitness to stand trial. On July 20, 1972 Staff Psychiatrist for the Psychiatric Institute of the Circuit Court of Cook County Dr. Robert H. Reifman reported to the court that Rivers was competent for that purpose. Rivers' trial began in December 1972 and culminated in his conviction January 26, 1973.

Almost immediately after the trial Rivers' trial attorney received several indications that caused him to doubt Rivers' competency. Accordingly the attorney filed with the trial court "Suggestions of Doubt of Competency of Accused," bringing to the court's attention a number of items of evidence to that effect. That led the trial court to order another examination by Dr. Reifman. On March 30, 1973 Dr. Reifman reported to the court that Rivers was not then competent to be sentenced (without stating the underlying basis for that conclusion).

Rivers' attorney immediately moved to vacate the judgment on the ground that

---

1. Special thanks are due Rivers' volunteer appointed counsel, James Klenk and Mark Sableman, for the sharpened focus they have brought to the issues, both by substituting the Petition for Rivers' original *pro se* version and by their excellent briefs on the cross-motions. In turn, Assistant Attorney General Neil Goodfriend has aided the Court by a comparably high-grade presentation of the other side of the difficult legal issues involved.

2. Because Count I is dispositive of the case it is unnecessary to reach the other issues posed by the parties.

3. This section of the opinion simply recounts the sequence of events from Rivers' indictment to his sentencing. Details as to his mental condition are dealt with in the substantive discussion as to his right to a hearing.

Rivers' current condition of mental unfitness indicated that he had likely been incompetent at the time of trial. Instead of granting a hearing on that score, the trial court ordered still another examination of Rivers by Dr. Reifman. On April 19, 1973 Dr. Reifman reported by letter to the court that:

(a) Rivers was not then mentally competent to be sentenced.

(b) Dr. Reifman had no opinion regarding Rivers' sanity at the time of the alleged murder.

(c) Rivers had been competent to stand trial.

Again Dr. Reifman did not report the bases for his conclusions or the reasons for his diametrically opposed opinions as of two dates so close together. Based on Dr. Reifman's report the trial judge again refused to grant a hearing, determined that Rivers was not fit to be sentenced and remanded him to the Department of Mental Health.

On June 18, 1973 Rivers was examined by Dr. Leonard Horecker, a staff psychiatrist at the Illinois Security Hospital. Dr. Horecker reported to the court that Rivers was then mentally unfit for sentencing. On January 30, 1974 Dr. Reifman again examined Rivers and reported to the court that he was now mentally fit to be sentenced.

On April 9, 1974 the trial court held a hearing on Rivers' mental competency for the first time, limited however to his competency then to be sentenced—not competency at the time of trial. Dr. Reifman testified, based on his fourth examination of Rivers, that he was then mentally fit for sentencing. No cross-examination was permitted by the trial court as to Rivers' competency and ability to cooperate with counsel at trial. Based on the Reifman report and testimony the trial court found Rivers mentally competent to be sentenced. It rejected a motion for a full hearing and an independent examination by another psychiatrist, imposing a 30- to 90-year sentence.

### Rivers' Right to a Hearing

Rivers contends in the Petition that the trial court denied him due process of law by refusing to hold a post-trial hearing to determine whether he had been mentally fit to stand trial. Essentially Rivers' counsel argue that the matters brought to the judge's attention, especially when corroborated by the psychiatric finding that he was not fit to stand sentencing so soon after trial, raised enough doubt as to his earlier competency so that the trial court should have held a hearing.

Section 5–2–1 of the Unified Code of Corrections (Ill.Rev.Stat. ch. 38, ¶ 1005–2–1) provides:

(c) When a bona fide doubt of the defendant's fitness to stand trial or be sentenced is raised, the court shall order that a determination of that question be made before further proceedings.

Under that provision a trial judge has a duty to conduct a fitness hearing only when facts brought to his attention raise a bona fide doubt regarding a defendant's fitness.

That statutory scheme is clearly constitutional. *Pate v. Robinson*, 383 U.S. 375, 384–87, 86 S.Ct. 836, 841–43, 15 L.Ed.2d 815 (1966); *People v. Bilyew*, 73 Ill.2d 294, 22 Ill.Dec. 736, 383 N.E.2d 212 (1978). Thus the due process question can coincide with the statutory one: whether evidence presented to the trial judge was sufficient to raise "a bona fide doubt of the defendant's fitness to stand trial." Compare the standard of federal habeas review as stated in *Reese v. Wainwright*, 600 F.2d 1085, 1091 (5th Cir. 1979):

When federal habeas relief is sought on grounds of incompetency-in-fact, the petitioner's initial burden is heavy. "Courts in habeas corpus proceedings should not consider claims of mental incompetence to stand trial where the facts are not sufficient to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to the mental capacity of the petitioner."

Certainly the trial judge had no reason to doubt Rivers' competency *before* commencement of trial. Rivers had been found

competent by a psychiatrist about five months earlier, and no evidence was presented to the court before trial to indicate that there had been any change.

■ Accordingly the statute was not literally applicable, and Rivers' counsel are right: Due process becomes an issue of whether evidence presented to the judge *after* trial was sufficient to raise the required bona fide doubt. Psychiatric testimony is needless to say not the sole illuminator of a defendant's fitness. In *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975), the Supreme Court listed three factors that should be considered in determining whether further inquiry is required:

(1) evidence of a defendant's irrational behavior;

(2) his demeanor at trial; and

(3) any prior medical opinion on competence,

but stated "that even one of these factors standing alone may, in some circumstances, be sufficient."

■ As to the first factor, the trial judge was presented in defense counsel's Suggestions of Doubt with evidence of irrational behavior by Rivers starting almost from the announcement of the judgment. That evidence, including several almost incomprehensible letters, indicated that Rivers did not recognize that he had been found guilty. Even though there was no evidence of irrational behavior either before or during trial, the showing of Rivers' behavior immediately after trial was concededly such as to cause the trial judge to doubt Rivers' competence to be sentenced.

As for the second factor, the court was unable to make any meaningful observations of Rivers' demeanor. As the trial court itself stated (Tr. 753–54):

[S]ince I have had no occasion to talk to Mr. Rivers, nor has he taken the stand in his own behalf, so I have not had the opportunity to observe his manner while participating in any conversation or in any conduct before the court other than to be present throughout the course of the trial.

Thus the second factor is really neutral in this case. If an individual's mental problems typically exhibit themselves in violent outbursts or similar manifestations, the non-observation of any such symptoms may be probative. But as indicated later in this opinion, such was not the nature of Rivers' conduct when he was concededly incompetent. No inference may appropriately be drawn then from the trial court's failure to observe Rivers' manner or conduct.

It was clearly the third factor, in the form of opinions by Dr. Reifman, that persuaded the trial judge not to hold a hearing to determine Rivers' competency at trial. But those opinions simply will not withstand analysis for that purpose:

Dr. Reifman's July 1972 psychiatric examination was of little value in determining Rivers' competency once contrary indications became known. It took place some five months before trial. Dr. Reifman confirms that Rivers' condition is a volatile one that can change in a very short time—and indeed did according to him. Consequently Rivers' competence months before trial is not substantially probative (really an understatement) of his condition at trial time.

Thus the trial judge was presented with a defendant who was admittedly incompetent almost immediately after trial and who had not been examined by a psychiatrist within a close proximity of the trial. Such evidence clearly raises at the very least a bona fide doubt as to Rivers' competence during trial. Only one piece of evidence was on the other side of the scales: Dr. Reifman's April 19, 1973 letter stating—without any indication of its underpinning—that although Rivers was not fit for sentencing he was sufficiently competent to have stood trial.

That report was of limited value at best. Dr. Reifman stated only his conclusion and failed to discuss the basis for his determination. Such conclusory reports by psychiatrist experts are generally not favored by courts. *See, Bruce v. Estelle*, 483 F.2d 1031, 1035 n.7 (5th Cir. 1973); *Green v. United States*, 389 F.2d 949, 955 (D.C.Cir.1967);

*Blocker v. United States*, 288 F.2d 853, 863 (D.C.Cir.1961).

Moreover, a conclusory report was particularly inappropriate in Rivers' situation. Dr. Reifman's own later testimony demonstrates that Rivers' condition was extremely volatile and could potentially change at any time (Tr. 834–35 of the April 9, 1974 hearing on Rivers' competency to be sentenced):

Q. And, Doctor, what was the nature of that mental disease or defect that the defendant was suffering from at that time?

A. I made a diagnosis of schizophrenic reaction.

Q. Now, Doctor, will you tell the Court briefly what you mean by schizophrenic reaction?

A. Well, a schizophrenic reaction essentially has three components, I found Mr. Rivers—schizophrenic reaction, rather, indicates that a person is unable to appreciate reality. It may indicate that a person's feelings are not appropriate to reality or it may manifest itself in bizarre behavior out of context with reality.

Q. Well, Doctor, in your experience, applying your education, is the onset of a schizophrenic reaction in a patient something that suddenly occurs or something that occurs over a long period of time?

\*   \*   \*   \*   \*   \*

A. The symptoms of schizophrenia can appear at any time in a person's lifetime.

Q. And when you say they can appear at any time, that means that various times they may be there, those symptoms, and at other times they may not be?

A. No, that is one possible interpretation, the other possible interpretation is that they may be present in a dormant state and make their appearance after a particularly stressful time for the first time, at any time.

Q. And isn't it true, Doctor, that they may make their appearance several times at various times?

A. That is true in some cases.

Competency hearings are intended to permit that issue, like all other contested issues, to be subjected to the adversary process. Except for the report of Dr. Reifman, the evidence available to the trial judge raised a serious question as to Rivers' competency during the trial. Dr. Reifman's statement, without any explanation or discussion of the underlying factors, was simply not enough to quash all doubt. It is possible that Dr. Reifman's conclusion would have survived the crucible of cross-examination—but it might not.[4] Psychiatry is far from an exact science and Rivers' condition was obviously a most complex one. Other psychiatric testimony could have cast further light on the problem. All these things, capable of adequate development only in the adversary context, show graphically why the Constitution requires a hearing if there exists a *bona fide doubt* as to a defendant's competence.

Under other circumstances no hearing might have been required—for example, had Dr. Reifman examined Rivers shortly before commencement of trial and found him fit, and had his subsequent examination explained the probable time and cause of the onset of Rivers' later incompetency. But those are not the facts. This Court must find that Rivers' right to due process was abridged when the trial court failed to hold a hearing to determine whether he was competent to stand trial. *See, People v. Turner*, 88 Ill.App.3d 793, 44 Ill.Dec. 59, 410 N.E.2d 1151 (1st Dist. 1980).

*Appropriate Remedy*

■ Two alternatives present themselves: the granting of a hearing now to

---

4. Rivers' counsel argue that Dr. Reifman's post-trial opinion was suspect because at that point he had a stake in upholding his pre-trial opinion on which the trial judge had relied. It is not necessary to agree with that contention to hold that the opportunity should have been given to make it in an adversary context on a fully developed record.

determine Rivers' competency as of his original trial date or the granting of a new trial on the murder charge. There is respectable authority for the first of these. *Pate v. Smith*, 637 F.2d 1068, 1072–73 (6th Cir. 1981). But in this case the lapse of some eight and one-half years, coupled with the admitted transitoriness of Rivers' type of mental unfitness, makes the prospect of an accurate reconstruction as of December 1972 remote. This Court therefore exercises its discretion in the manner authorized by the Supreme Court in *Pate*, 383 U.S. at 387, 86 S.Ct. at 843, under almost identically difficult circumstances:

> It has been pressed upon us that it would be sufficient for the state court to hold a limited hearing as to Robinson's mental competence at the time he was tried in 1959. If he were found competent, the judgment against him would stand. But we have previously emphasized the difficulty of retrospectively determining an accused's competence to stand trial. *Dusky v. United States*, 362 U.S. 402 [80 S.Ct. 788, 4 L.Ed.2d 824] (1960). The jury would not be able to observe the subject of their inquiry, and expert witnesses would have to testify solely from information contained in the printed record. That Robinson's hearing would be held six years after the fact aggravates these difficulties....
>
> If the State elects to retry Robinson, it will of course be open to him to raise the question of his competence to stand trial at that time and to request a special hearing thereon. In the event a sufficient doubt exists as to his present competence such a hearing must be held. If found competent to stand trial, Robinson would have the usual defenses available to an accused.

There is no genuine issue as to any material fact with respect to Count I of the Petition, and Rivers is entitled to a judgment on that Count as a matter of law. This Court will issue a writ of habeas corpus, with respondents directed to discharge Rivers unless the State of Illinois gives him a new trial within a reasonable time. *Pate*, 383 U.S. at 386, 86 S.Ct. at 842.

## SUPPLEMENTAL OPINION

In its September 3, 1981 memorandum opinion and order (the "Opinion") this Court granted summary judgment in favor of petitioner Clarence Rivers ("Rivers"). Summary judgment was limited to Count I of Rivers' habeas corpus petition and predicated upon the failure of the state trial court to have provided Rivers with a post-trial *hearing* to determine whether he had been mentally fit to stand trial.

Respondents have moved for reconsideration on the false premise that the United States Supreme Court's recent decision in *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) requires deference to the state court's determination. That contention deserves short shrift, and respondents' motion is denied.

This Court has consistently applied *Sumner* where it is properly applied. See, *e.g.*, *People ex rel. Smith v. Elrod*, 511 F.Supp. 559 (N.D.Ill.1981). But *Sumner* deals only with the effect to be afforded *factual* determinations by state courts as mandated by 28 U.S.C. § 2254(d). Where as here the issue is a *legal* question—the application of federal constitutional law to undisputed facts—such deference is wholly inappropriate. *Cuyler v. Sullivan*, 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980) is only the most recent application of the mandate by the Supreme Court in that respect, a proposition as to which *Townsend v. Sain*, 372 U.S. 293, 318, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963) provides the classic statement.

For that reason respondents' motion for reconsideration is denied. Respondents are again directed to discharge Rivers unless the State of Illinois gives him a new trial within a reasonable time.