UNITED STATES of America ex rel. Clarence RIVERS, Petitioner-Appellee,

v.

Gayle M. FRANZEN and Tyrone Fahner, Respondents-Appellants.

No. 81–2599.

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1982.

Decided Nov. 10, 1982.

---

Mark Sableman, Reuben & Proctor, Chicago, Ill., for petitioner-appellee.

Neal B. Goodfriend, Asst. Atty. Gen., Chicago, Ill., for respondents-appellants.

Before CUMMINGS, Chief Judge, PELL, Circuit Judge, and GRANT,* Senior District Judge.

PELL, Circuit Judge.

Pursuant to 28 U.S.C. § 2254 (1976), the petitioner Clarence Rivers sought a writ of habeas corpus in the district court. The four claims of Rivers' amended petition alleged four procedural errors in Rivers' trial in state court: (1) that he was denied due process because of the trial court's failure to hold a post-trial hearing on his competence to have stood trial; (2) that he was in fact incompetent at trial; (3) that he was denied a post-trial examination regarding his competence at trial by an unbiased psychiatrist; and (4) that he was denied his right to cross-examine the psychiatrist who did conduct the post-trial examination as to his competency at trial. On September 3, 1981, the petition was granted by the district court on the first claim only in response to cross-motions for summary judgment. *United States ex rel. Rivers v. Franzen,* 522 F.Supp. 443 (N.D.Ill.1981). A motion for reconsideration was filed by the respondents based on the Supreme Court's decision in *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The motion was denied on September 22, 1981. The central issue presented to this court is whether Rivers was denied procedural due process by the state trial court's failure to hold a post-trial hearing on Rivers' competency to have stood trial.

I. Factual Background and Prior Proceedings

The petitioner was indicted on March 20, 1971, for the murder of his wife. During pre-trial discovery, counsel for the petitioner indicated that the defense of insanity might be raised at trial. On June 19, 1972, another attorney was substituted to represent Rivers, and the defense was not subsequently presented.

Pursuant to the petitioner's motion, the trial judge ordered the petitioner to undergo a mental examination. On July 13, 1972, Dr. Robert H. Reifman, Staff Psychiatrist for the Psychiatric Institute of the Circuit Court of Cook County, examined Rivers. On July 20, 1972, he reported to the court that Rivers was competent to stand trial. Rivers' trial began in December 1972. The petitioner asserted an alibi defense to the charges. No further motions to evaluate the petitioner's competency were made during the trial. On January 26, 1973, the trial court found the petitioner guilty of murder and entered judgment. A pre-sentencing investigation report was ordered by the court and a hearing on post-trial motions and sentencing was set for February 23, 1973.

In the February 23 hearing, counsel for the petitioner moved to suspend the sentencing so that a psychiatric examination of Rivers could be made and so that a hearing on competency could be held pursuant to the relevant provision of the Illinois statutes, Ill.Rev.Stat. ch. 38 § 104–2 (1971). The court granted leave for Rivers' counsel to file the motion. The motion was supported by an affidavit from Rivers' counsel that he had noted a mental deterioration in the petitioner and had been made aware of communications of the petitioner with relatives and friends that indicated Rivers was not aware of the nature and purpose of the proceedings. His counsel stated in court that these matters had only come to his attention a few days earlier in February. The court gave the petitioner additional time to supplement the motion and postponed any further rulings.

On March 9, 1973, Rivers' counsel filed his "Suggestions of Doubt of Competency of Accused." In it counsel referred to: (1) petitioner's disbelief that he could be punished for the murder of his wife when the verdict was explained to him by his counsel

* Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by desig-

nation.

after trial; (2) his history of marital problems; (3) the nature of the crime committed; and (4) irrational letters the petitioner had written to a woman stating that he would be freed and become her lover. A letter attached as an exhibit and dated February 12, 1973, referred to "my [Rivers'] last letter to you." The "Suggestions" also stated that there were other letters to this same woman which had been destroyed. The trial court ordered a psychiatric examination of the petitioner.

On March 14, 1973, Dr. Reifman examined the petitioner and on March 30, 1973, reported to the court that Rivers was not then competent to be sentenced as "[h]e does not fully appreciate the seriousness of the guilty finding because of a mental condition." Counsel for the petitioner then moved to vacate the judgment because "[i]f he was incompetent [for sentencing] he may very well have been incompetent during the trial of this cause." The court then ordered another examination of Rivers by Dr. Reifman for a determination of Rivers' competency to have stood trial and his competency at the time of the offense.

On April 19, 1973, Dr. Reifman reported to the court that Rivers was still not mentally competent to be sentenced as of his examination on April 12, 1973; that he had no opinion on Rivers' sanity at the time of the alleged murder; and that Rivers had been competent to stand trial. The parties then stipulated that Rivers was not competent to be sentenced and the court remanded Rivers to the Illinois Department of Mental Health.

On June 18, 1973, Rivers was examined by Dr. Leonard Horecker, a staff psychiatrist at the Illinois Security Hospital. He reported to the court that Rivers was still mentally unfit for sentencing. Approximately seven months later, on January 30, 1974, Dr. Reifman examined Rivers and determined that he was then mentally fit to be sentenced.

On April 9, 1974, the trial court held a hearing limited to Rivers' competency to be sentenced. The court refused to allow Rivers' counsel to cross-examine Dr. Reifman on Rivers' competency during trial.

Dr. Reifman testified that he had been employed at the Psychiatric Institute of the Circuit Court of Cook County for ten years, during which time he had examined several thousand criminal defendants as to their mental condition pursuant to requests by the court. He had performed psychiatric examinations on the petitioner on July 13, 1972; March 14, 1973; April 12, 1973 and January 30, 1974. In the July 13, 1972 pre-trial examination, he had found no history of Rivers ever having seen a psychiatrist or of his being in a mental hospital. There were no remarks made by Rivers to Dr. Reifman that indicated Rivers was suffering from a mental illness.

In the March 14, 1973 post-trial examination to determine Rivers' competency to be sentenced, Dr. Reifman found Rivers to be exhibiting symptoms of schizophrenia for the first time. The doctor testified that the symptoms of schizophrenia may be present in a dormant state and may first appear after a particularly stressful time. At the time of the April 12, 1973 examination he still considered the petitioner not fit to be sentenced because he "refused to believe that he had been found guilty and that as a result of being found guilty he was subject to sentencing by the Court." At this point in Dr. Reifman's testimony the following exchange took place between Dr. Reifman and Rivers' counsel:

Q. At any rate, during the trial you would say that he was in a period of remission, is that right?

\* \* \* \* \* \*

A. No, it is my opinion that the disease became apparent after the trial, so I wouldn't say—you can't say a person is in a state of remission before the disease makes an appearance. Now he is in a state of remission, I believe.

Dr. Reifman also testified that in his last examination of Rivers on January 30, 1974, the petitioner understood that a judge of the Circuit Court of Cook County had found him guilty of a crime and that he was going to be sentenced on the charge. He found

that Rivers was still suffering from schizophrenia, but that the disease was in partial remission and would remain in a state of remission for several months.

The trial court ordered Dr. Reifman to examine Rivers yet again. On April 11, 1974, Dr. Reifman stated that the result of his examination was that the petitioner was competent for sentencing. The petitioner testified as to his understanding of the nature and purpose of the proceedings. Based on Dr. Reifman's testimony and its own observation of Rivers, the trial court found Rivers competent to be sentenced. The court denied Rivers' motion for a full hearing and an independent examination by another psychiatrist on his competency to have stood trial. On April 23, 1974, the court sentenced the petitioner to a term of thirty to ninety years in the Illinois Department of Corrections.

The petitioner appealed to the Illinois Appellate Court, asserting that he was entitled to a post-trial hearing on his competency to have stood trial under the Illinois statute. The appellate court found that the Illinois statute contemplated a determination of fitness to stand trial prior to or during trial, but did not preclude such a determination after trial. In affirming the conviction, the court held that there was no abuse of the trial court's discretion in its refusal to hold a hearing and that no bona fide doubt of Rivers' fitness to stand trial was raised. *People v. Rivers,* 61 Ill.App.3d 376, 18 Ill.Dec. 609, 377 N.E.2d 1245 (1978). Leave to appeal was denied by the Supreme Court of Illinois. *People v. Rivers,* No. 6764 (Oct. 2, 1979).

The petitioner then filed this petition for a writ of habeas corpus. Rivers and the respondent filed cross-motions for summary judgment. The district court, in evaluating the first claim of Rivers' petition, noted that the Illinois statutory scheme delineating when a competency hearing must be held had been held constitutional by the Supreme Court in *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The district court, however, found the Illinois statute not to be "literally applicable" to Rivers' case because the evidence of alleged incompetency to have stood trial was presented to the judge after trial. Nevertheless, the district court found that the procedural due process right to a competency hearing established in *Pate* necessitated an evaluation of whether the evidence presented to the judge after trial was sufficient to raise a bona fide doubt of Rivers' competency to have stood trial. The court then concluded that the evidence did raise a bona fide doubt, so that a post-trial hearing on Rivers' competency to have stood trial should have been held. Due to the lapse of eight and one-half years, the court concluded that a competency hearing would not be meaningful.[1] The court, therefore, issued the writ with directions to the respondent to release Rivers unless the state were to give him a new trial within a reasonable time.[2]

## II. The Applicability of *Pate v. Robinson*

Due process requires that a defendant not be made to stand trial for a criminal charge unless he has a sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding, and possesses a rational and factual understanding of the proceedings. *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam). In *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), the Supreme Court delineated a separate procedural due process right to a hearing on competency to stand trial when there is evidence prior to or during trial which establishes a bona fide doubt of incompetency to stand trial. In *Pate,* the state trial court was presented

1. We are not necessarily convinced by the record, as the district court was, that a meaningful hearing could not be held. Similar lapses of time and difficulty in retroactive psychiatric analysis are present in most such cases. In light of our disposition of the case, however, we need not decide the appropriateness of the remedy.

2. On October 5, 1981, the district court granted the respondent's motion to stay the writ pending this appeal.

with extensive evidence of Pate's alleged incompetency during trial. The state trial court, nevertheless, failed to hold a competency hearing although the Illinois statutory provision, the predecessor of the statutory provision in this case, required the trial court to conduct a hearing whenever the evidence raised a "bona fide doubt" as to a defendant's competence to stand trial. The Supreme Court found a denial of due process in the trial court's failure to hold a hearing during the trial. 383 U.S. at 385, 86 S.Ct. at 842.

The Supreme Court subsequently explained its holding in *Pate* in *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975):

> In *Pate v. Robinson,* we held that the failure to observe procedures adequate to protect a defendant's right not to be *tried or convicted* while incompetent to stand trial deprives him of his due process right to a fair trial. Although in *Robinson* we noted that Illinois "jealously guard[ed] this right," we held that the failure of the state courts to invoke the statutory procedures deprived Robinson of the inquiry into the issue of his competence to stand trial to which, on the facts of the case, we concluded he was constitutionally entitled. The Court did not hold that the procedure prescribed by Ill.Rev.Stat. c. 38, § 104–2 (1963), was constitutionally mandated, although central to its discussion was the conclusion that the statutory procedure, if followed, was constitutionally adequate. Nor did the Court prescribe a general standard with respect to the nature or quantum of evidence necessary to require resort to an adequate procedure. Rather, it noted that under the Illinois statute a hearing was required where the evidence raised a " 'bona fide doubt' " as to a defendant's competence, and the Court concluded "that the evidence introduced on Robinson's behalf entitled him to a hearing on this issue."

420 U.S. at 172–73, 95 S.Ct. at 904 (citations and footnote omitted, emphasis added). In brief, the Supreme Court in *Pate* concluded that procedural due process as well as the Illinois statute required a hearing on Robin-

son's competency to stand trial based on the extensive evidence of incompetency presented during his trial.

Neither of the parties has questioned the applicability of *Pate* to the facts of this case. There is some question, however, whether the procedural due process safeguard in *Pate,* which was intended to ensure the procedural fairness of a trial, must be provided when no evidence of incompetency is before the trial court until after the defendant has been tried and convicted.

Our concern is reinforced by the decision of the Fifth Circuit Court of Appeals in *Reese v. Wainwright,* 600 F.2d 1085 (5th Cir.), *cert. denied,* 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979). The facts of *Reese* are strikingly analogous to the facts of the present case, with one exception to be noted below. In *Reese,* the defendant was found competent to stand trial in a pre-trial independent psychiatric examination. Earlier examinations had varied as to whether the defendant was competent. A hearing was held in the state court, and Reese was adjudged competent to stand trial. In the trial, Reese presented an insanity defense, but there was no evidence of any unusual behavior by Reese during the trial and Reese's counsel never claimed during trial that Reese was incompetent. On September 27, 1972, Reese was convicted and sentenced. Two weeks after the trial, Reese was examined by psychiatrists in a separate criminal proceeding and they determined that he was actively psychotic and not then fit to stand trial. One psychiatrist even surmised that he was not competent during the recently completed trial. On October 24, 1972 the trial court denied a motion to vacate the judgment and sentence and no competency hearing was held. *Id.* at 1089. Despite the post-trial evidence of incompetency, the Fifth Circuit on habeas review held that the procedural requirement of *Pate* applied to pre-trial and trial proceedings only. The court stated that "[a] *Pate* violation is a procedural error by the trial court and it may occur only in the time frame encompassed by the trial itself and immediately related proceedings." *Id.* at 1093.

Although in *Reese* the trial court had sentenced the defendant on the day of his conviction before the issue of competency at trial arose, the reasoning upon which the Fifth Circuit found *Pate* to be inapplicable in *Reese* applies with equal validity to the present case. The Supreme Court in *Drope* emphasized the narrow holding of *Pate* and its principal concern with the creation of procedural rules designed to detect incompetence and ensure a fair trial. *Drope v. Missouri,* 420 U.S. 162, 172–75, 95 S.Ct. 896, 904–05, 43 L.Ed.2d 103 (1975). As stated in *Drope,* the issue is whether "in light of what was then known, the failure to make further inquiry into petitioner's competency to stand trial, denied him a fair trial." *Id.* at 174–75, 95 S.Ct. at 905. In this case, the post-trial evidence of alleged incompetency did not retrospectively render an otherwise fair trial in violation of due process. Ordinarily "one cannot fault a trial court judge for failing to determine a question that he has no reason to believe is in issue." *Davis v. Alabama,* 545 F.2d 460, 464 (5th Cir.1977), *quoted in Reese v. Wainwright,* 600 F.2d 1085, 1093 (5th Cir.), *cert. denied,* 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979).[3]

### III. The Existence of a Bona Fide Doubt

Even assuming *Pate* to be applicable to this case, the evidence presented to the trial court did not raise a bona fide doubt as to Rivers' competency at trial. Initially, the respondents' claim that the state courts' determination that there was

no bona fide doubt as to Rivers' competency is a factual determination entitled to a presumption of correctness under *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). However, "issues of fact," as used in 28 U.S.C. § 2254(d), are "basic, primary, or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators.'" *Townsend v. Sain,* 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963) (*quoting Brown v. Allen,* 344 U.S. 443, 506, 73 S.Ct. 397, 445, 97 L.Ed. 469 (1953) (opinion of Frankfurter, J.). The question of bona fide doubt is a conclusion of law, or at the least a mixed determination of law and fact. *See Drope v. Missouri,* 420 U.S. 162, 175, 95 S.Ct. 896, 905, 43 L.Ed.2d 103 (1975).[4] The state court's determination, therefore, is not entitled to the presumption of correctness under section 2254(d).

To establish a bona fide doubt of competency, a federal habeas petitioner seeking relief must show that there were matters known to the trial court

[t]hat raised at that time a "real, substantial, and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel." The test is an objective one. The duty to hold a competency hearing turns not on what the trial judge in fact had in mind, but whether the facts before him were such as to create a reasonable doubt as to the defendant's competency.

---

**3.** It is open to a defendant to assert his actual incompetence at trial in a subsequent collateral proceeding based on post-trial evidence, but that claim is entirely separate and distinct from a claim of a procedural error under *Pate.* *Reese v. Wainwright,* 600 F.2d 1085, 1093 (5th Cir.), *cert. denied,* 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979).

**4.** The respondents' reliance on *McCravy v. Lane,* 444 F.Supp. 240 (E.D.Tenn.), *aff'd mem.,* 573 F.2d 1310 (6th Cir.1977), *cert. denied,* 436 U.S. 947, 98 S.Ct. 2851, 56 L.Ed.2d 789 (1978), and *Howell v. United States,* 282 F.Supp. 246 (N.D.Ill.1968), *aff'd,* 442 F.2d 265 (7th Cir. 1971), is misplaced. *McCravy* merely states that the state court's factual determinations supported the conclusion that McCravy was

not entitled to a competency hearing, and that those factual determinations were presumed to be correct. 444 F.Supp. at 243. Although the district court in *Howell* did remark in dicta that the determination of bona fide doubt is a factual determination, that dicta is hardly controlling and was unnecessary to this court's affirmance. We also find that the respondent's references to *United States ex rel. Davis v. Franzen,* No. 80 C 2708 (N.D.Ill. Sept. 29, 1980), *aff'd mem.,* 676 F.2d 697 (7th Cir.1982) and *United States ex rel. Dominique v. Greer,* No. 81 C 766 (N.D.Ill., Feb. 1, 1982), *appeal docketed,* No. 82–1379 (7th Cir. March 15, 1982), demonstrate nothing more than that the federal courts on habeas review must defer to the state courts' determination of facts.

*Pedrero v. Wainwright,* 590 F.2d 1383, 1387–88 (5th Cir.) (citations omitted), *cert. denied,* 444 U.S. 943, 100 S.Ct. 299, 62 L.Ed.2d 310 (1979). The relevant factors to be considered in assessing the issue of competency are a defendant's "irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." *Drope v. Missouri,* 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975). Evidence establishing only one of these factors may nevertheless be sufficient to raise a bona fide doubt of incompetency. *Id.*

■ The only medical opinions on Rivers' competence to stand trial were those of Dr. Reifman on July 20, 1972, and on April 19, 1973. In both reports Dr. Reifman concluded that Rivers was competent to stand trial. Dr. Horecker's report six months after trial was limited to Rivers' competency to be sentenced. The district court totally dismissed Dr. Reifman's pre-trial report as being five months prior to trial, and refused to give any weight to both reports as being conclusory. The mere passage of several months from an examination to the time of trial or a plea does not totally undermine the merits of the opinion. *See, e.g., Hoornweg v. Smith,* 504 F.Supp. 1189, 1193 (W.D. N.Y.1981) (passage of one year from time of examination to time of plea). Moreover, the district court overlooked the fact that Dr. Reifman elaborated on the basis for all his reports in the April 9, 1974 hearing which was held before the trial court determined whether Rivers had demonstrated a bona fide doubt of incompetency at trial. The petitioner cannot now object to this testimony, not having done so before. The April 9 hearing was limited to Rivers' competency to be sentenced, and Rivers' cross-examination of Dr. Reifman was appropriately limited to that issue. Yet to the extent that the direct examination of Dr. Reifman went beyond those parameters, there were grounds for objection and a motion to strike, but not grounds for ignoring that testimony which is now before us as part of the record before the trial court.

As to Rivers' demeanor during trial, nothing occurred to evoke a bona fide doubt on the part of the court that Rivers was no longer competent to stand trial. A defense of insanity was withdrawn prior to trial. As the district court conceded, his behaviour at trial was a neutral factor. 522 F.Supp. at 446. The state trial court explicitly stated when first confronted with the issue in the February 23, 1974 post-trial hearing:

> [I] have had no occasion to talk to Mr. Rivers, nor has he taken the stand in his own behalf, so I have not had the opportunity to observe his manner while participating in any conversation or in any conduct before the court other than to be present throughout the course of the trial.

The state appellate court explicitly found that "[t]he record demonstrates that defendant performed no acts which could have reasonably caused the court to conclude: (1) that defendant was suffering from a mental disorder during his trial; and (2) that a mental disorder caused him to lose all recognition of the proceeding's nature and purpose, or prevented him from producing an appropriate defense." 61 Ill. App.3d at 384, 18 Ill.Dec. 609, 377 N.E.2d 1245. In sum, neither prior medical opinions or Rivers' demeanor at trial raised a bona fide doubt of Rivers' competency.

■ The petitioner relies solely on the remaining *Drope* factor, "irrational behavior," for establishing a bona fide doubt. The petitioner persuaded the district court that a bona fide doubt of Rivers' competency *at trial* was raised by evidence which demonstrated only that Rivers was incompetent *after trial.* Rivers' troubled marital history on its face fails to demonstrate a bona fide doubt about his competency prior to or during trial. The commission of the crime itself was not sufficient to raise a bona fide doubt. *See, e.g., Hoornweg v. Smith,* 504 F.Supp. 1189, 1192 (W.D.N.Y. 1981). Although the earliest of Rivers' letters referred to previous letters, there is no evidence in the record that any of the letters were sent during the trial or even prior to conviction. Although most of the letters were apparently destroyed, counsel had the opportunity by way of affidavit to give some approximation of when and how long

the letters were sent, as well as any of his own doubts about Rivers' competency during trial. The only other evidence of allegedly irrational behavior in the "Suggestions of Doubt of Competency of Accused" was Rivers' disbelief in reaction to his counsel's explanation of the verdict and Rivers' representations to his family after he was found guilty that "everything was alright."

Rivers asserts that evidence of irrational behavior occurring after trial is sufficient to raise a bona fide doubt of competency during trial. We disagree and find the cases cited by the petitioner to support his position to be distinguishable on their facts. In *Osborne v. Thompson,* 610 F.2d 461 (6th Cir.1979) (per curiam), the Sixth Circuit found a bona fide doubt of incompetency based on pre-trial evidence of incompetency, the petitioner's conduct during trial, and post-trial incidents. In *Pride v. Estelle,* 649 F.2d 324 (5th Cir.1981), the Fifth Circuit found a substantial doubt as to the defendant's competency-in-fact to have stood trial based on a post-trial medical opinion that the defendant was mentally defective and a paranoid schizophrenic, the opinion of two medical experts that the defendant was at that time incompetent and the opinion of one medical expert that the defendant was incompetent during his trial. In *Kibert v. Peyton,* 383 F.2d 566 (4th Cir.1967), testimony of witnesses about the defendant's behavior during trial as well as post-trial expert opinions were held sufficient to establish incompetency in fact. In *Stone v. United States,* 358 F.2d 503 (9th Cir.1966), *cert. denied,* 389 U.S. 961, 88 S.Ct. 341, 19 L.Ed.2d 370 (1967), involving a petition under 28 U.S.C. § 2255 (1976), post-trial expert opinions that the defendant was incompetent at the time of trial were unchallenged. The court specifically noted that it was dealing only with the hearing requirements of 18 U.S.C. § 4244 and that the appellant was not contending that the trial court had before it sufficient evidence of defendant's incompetence to stand trial to render the court's failure to hold a competency hearing a violation of due process under *Pate.* In *Beale v. United States,* 317 F.Supp. 731 (N.D.Miss.1970), also arising under section 2255, the district court found the defendant to be incompetent in fact based on evidence of incompetency occurring prior to, during, and after trial. None of these cases hold that evidence which demonstrates only incompetency sometime after trial is sufficient in and of itself to raise a bona fide doubt of incompetency during trial.[5]

Yet even if the evidence of incompetency after trial could have given rise to a bona fide doubt of incompetency during trial, the opposing evidence of competency at trial overcame any such doubt. The conclusion of both Dr. Reifman's pre-trial and post-trial determination[6] of Rivers' competency at trial was that Rivers was competent during trial. As the district court noted, there was certainly no reason for the trial court to doubt Rivers' competency before commencement of trial. Rivers had been found to be competent to stand trial by Dr. Reifman five months earlier, and no evidence was presented to the court to cause it to question that determination. No requests were made by Rivers' counsel, the state, or the court for further inquiry into Rivers' competency. We must assume that the attorneys for both sides, as well as the trial court itself, would have exercised their duty to raise the issue, as was done after trial, had any doubt surfaced as to Rivers' competence during trial. *See Reese v. Wainwright,* 600 F.2d 1085, 1094 (5th Cir.), *cert. denied,* 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979).

**5.** The petitioner also relies on two state appellate court decisions, *People v. Turner,* 88 Ill. App.3d 793, 44 Ill.Dec. 59, 410 N.E.2d 1151 (1980), and *People v. Freyre,* 76 Misc.2d 210, 348 N.Y.S.2d 845 (Sup.Ct.1973). As with the cases above, neither of these cases holds that evidence allegedly demonstrating incompetency after trial alone raises a bona fide doubt of incompetency during trial.

**6.** Without any citation of authority, the petitioner asserts that Dr. Reifman's post-trial report was biased because he had an interest in validating his prior opinion. Even if Dr. Reifman's post-trial report is not taken into consideration, the remaining evidence supports our conclusion.

A significant factor upon which the district court did not remark was the failure of Rivers' counsel to raise any question of competency during trial. The petitioner urges that the nature of schizophrenia is such that he could have been suffering from the disease without manifesting symptoms cognizable by counsel. Mental illness, however, does not necessarily mean that a person is legally incompetent to stand trial. The standard for determining competency is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam). Counsel for a defendant, perhaps more than any other party or the court, is in a position to evaluate a defendant's ability to understand the proceedings and assist counsel with his defense. On the facts of this case, the failure of defendant or his counsel to raise the competency issue is persuasive evidence that there was no bona fide doubt as to Rivers' competency during the trial. *See, e.g., Pedrero v. Wainwright*, 590 F.2d 1383 (5th Cir.), *cert. denied*, 444 U.S. 943, 100 S.Ct. 299, 62 L.Ed.2d 310 (1979).

Indeed, the evidence of Rivers' alleged incompetency strongly suggests that Rivers' schizophrenic condition commenced in reaction to his conviction and not during the trial. Dr. Reifman testified that Rivers was suffering from a schizophrenic condition and that the schizophrenic symptoms did not appear until after the trial. In light of the indicia of competence before and during trial, Rivers' schizophrenia is more plausibly explained as the result of his conviction rather than the stress of the trial. *See, e.g., Reese v. Wainwright*, 600 F.2d 1085, 1094 (5th Cir.), *cert. denied*, 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979). The state appellate court found that "the expert medical testimony established that defendant's schizophrenic reaction had developed subsequent to trial." 61 Ill.App.3d at 384, 18 Ill.Dec. 609, 377 N.E.2d 1245. This explicit finding of the state appellate court was apparently overlooked by the district court, because it concluded that no hearing would have been required if Dr. Reifman's subsequent examination had "explained the probable time and cause of the onset of Rivers' later incompetency." 522 F.Supp. at 447.

No court can ascertain for a certainty whether defendant truly comprehended the nature and purpose of the proceedings against him. Procedural due process requires only that certain necessary procedural safeguards be provided to the defendant to ensure a fair evaluation of his competency when a bona fide doubt is raised. Our evaluation of a defendant's competency at trial is even more difficult on collateral review than in the context of a direct appeal. Whatever our resolution of this issue on direct appeal, some deference must be paid to the state courts' scrupulous efforts at providing Rivers a fair trial. As the Supreme Court recently noted, "[f]ederal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good faith attempts to honor constitutional rights." *Engle v. Isaac*, 456 U.S. 107, 128, 102 S.Ct. 1558, 1571, 71 L.Ed.2d 783 (1982). The equivocal evidence of alleged incompetency in this case, confined solely to incompetency after conviction and entry of judgment, is simply insufficient to find error of constitutional dimension in the trial court's failure to hold a competency hearing after trial.

The district court, in light of its issuance of the writ based on Rivers' first claim, failed to evaluate the remaining claims of the petition and therefore they were not presented to this court on appeal. By way of guidance for further proceedings, we note that the standard of review for finding incompetency-in-fact as alleged in Rivers' second claim is at least as stringent as the bona fide doubt standard suggested in *Pate*. *See Reese v. Wainwright*, 600 F.2d 1085 (5th Cir.), *cert. denied*, 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979). Rivers' third and fourth claims are variations on Rivers' central argument that the post-trial procedures used by the state trial court were inadequate to determine his competency. The third claim is that Rivers should have been examined after the trial

by a physician other than Dr. Reifman since he had an interest in reaffirming the results of his pre-trial examination of Rivers. The fourth claim is that Rivers should have been allowed to cross-examine Dr. Reifman on his opinions. In examining the merits of the third and fourth claims, the district court is directed to consider the applicability of the Supreme Court's recent opinions in *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) and *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) and this court's recent opinion in *Norris v. United States,* 687 F.2d 899 (7th Cir.1982), in determining whether these claims were adequately preserved in the state courts for purposes of collateral review.[7]

Therefore, the judgment of the district court is reversed and the cause is remanded to the district court for further proceedings in accordance with this opinion. Upon remand, Circuit Rule 18 shall be applicable.

REVERSED AND REMANDED.

**7.** During oral argument reference was made to the possible applicability of *Stokes v. United States,* 652 F.2d 1 (7th Cir.1981) (per curiam), to the case before us. Upon consideration, we have determined that *Stokes* has no application here. That case dealt only with the issue of when a district court must hold a hearing on collateral review under 18 U.S.C. § 2255. While it is true that the underlying claim of the *Stokes'* petition was incompetency, *Stokes* has no relevance to the issue of when a state trial court must hold a hearing on competency to satisfy the constitutional requirements of procedural due process which is the issue before us in the present case.