THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ARTHUR NEWELL, Defendant-Appellant.

Third District   No. 3—88—0649

Opinion filed January 26, 1990.—Rehearing denied May 14, 1990.

Catherine Fitzsimmons, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Masters, State's Attorney, of Joliet (Rita Kennedy Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Following a jury trial, defendant Arthur Newell was convicted of felony murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(3)) and sentenced to a 60-year, nonextended term of imprisonment. The jury found defendant guilty but mentally ill. (Ill. Rev. Stat. 1987, ch. 38, par. 6—2(c).) The defendant appeals.

The record indicates that during the evening of January 11, 1988, the defendant, along with Joe Robinson, Duane Page, Brian Page, Benjamin Burnett, and a boy named "Pookey" chartered a limousine from the victim, Robert DeYoung. DeYoung chartered and drove a black stretch limousine. At trial, Joe Robinson testified that after cruising the streets of Joliet in the limousine, Duane Page directed DeYoung to a park, where Burnett held a gun to DeYoung's head. Robinson stated that he began leaving at that point and noticed defendant looting the front part of the limousine. A short time later, Duane Page, Brian Page, Burnett, and the defendant arrived at

Robinson's house. The defendant had a flashlight and a car phone. Robinson testified that he heard Burnett say, "Duane, why did you have to shoot the man twice in the head?" Duane answered, "So what. I did it." DeYoung was later found dead in the park with two gunshot wounds to the head. The record shows that after his arrest, Duane Page admitted shooting DeYoung.

Three psychiatrists testified concerning the defendant's mental state at the time of the offense. Dr. Barr and Dr. Egle testified for the defense. They testified the defendant was mildly retarded and in their opinion did not understand the proceedings against him. The State's psychiatrist explained that although the defendant was mildly retarded, he fully understood the consequences of his actions. At the close of all of the evidence, the trial judge instructed the jury on, *inter alia*, the elements of guilty but mentally ill.

We first address whether the defendant proved his insanity by a preponderance of the evidence. Three psychiatrists testified at trial about the defendant's mental state at the time of the offense. Dr. Egle and Dr. Barr testified for the defense and Dr. Kruglik testified for the State. Defendant asserts the testimony of his two expert witnesses established his insanity and that their testimony was more credible than the State's expert witness. Dr. Egle observed that the defendant was moderately retarded, and as a result, the defendant did not possess the capability to conform his conduct to the law. Dr. Barr testified that the defendant did not know that a certain act was wrong unless told by someone. However, the State's expert, Dr. Kruglik, commented that although the defendant was mildly retarded, he was able to appreciate the criminality of his conduct.

■■ When a defendant asserts the affirmative defense of insanity, he has the burden of establishing by a preponderance of the evidence that he was insane. (Ill. Rev. Stat. 1987, ch. 38, pars. 3—2(b), 6—2(e).) The resolution of this fact question is to be made by the fact finder. (*People v. Bouchard* (1989), 180 Ill. App. 3d 26, 535 N.E.2d 1001.) A trier of fact's finding a defendant legally sane at the time of the offense will not be disturbed on appeal unless it is against the manifest weight of the evidence. (*People v. Bouchard* (1989), 180 Ill. App. 3d 26, 535 N.E.2d 1001.) Upon review of the record, we do not believe the trier of fact's finding was against the manifest weight of the evidence.

■■ In deciding questions of sanity, the trier of fact may accept one expert's opinion over another. (*People v. Schwartz* (1985), 135 Ill. App. 3d 629, 482 N.E.2d 104.) Here, the trier of fact was presented with a conflict of the evidence as to whether defendant was sane. The

jury resolved this conflict in favor of finding defendant sane at the time of the offense. This decision is amply supported by the testimony of the State's expert witness.

■ We next address the issue of whether the trial court abused its discretion in finding the defendant fit to stand trial. A criminal defendant has a constitutional right not to be tried or convicted while he or she is incompetent to stand trial. (*People v. Turner* (1980), 88 Ill. App. 3d 793, 410 N.E.2d 1151.) The defendant is unfit if, because of a mental or physical condition, he or she is unable to understand the nature and purpose of the proceedings or to assist in his or her defense. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) In making this determination, the court should consider whether the defendant has sufficient present ability to consult with defense counsel with a reasonable degree of rational understanding and whether the defendant has both a rational and factual understanding of the proceedings. *People v. Turner* (1980), 88 Ill. App. 3d 793, 410 N.E.2d 1151.

The law presumes that the defendant is fit to stand trial. (*People v. Barnard* (1981), 95 Ill. App. 3d 1132, 420 N.E.2d 1076.) However, where a *bona fide* doubt of the defendant's fitness has been raised, the State has the burden of proving, by a preponderance of the evidence, that the defendant is fit. (*People v. Turner* (1980), 88 Ill. App. 3d 793, 410 N.E.2d 1151.) Both the initial determination as to whether a *bona fide* doubt as to the defendant's fitness exists and a finding of fitness after a hearing are matters for decision by the trial court, reversible only upon a showing of abuse of discretion. *People v. Dominique* (1980), 86 Ill. App. 3d 794, 408 N.E.2d 280.

■ Here, the trial court ordered a fitness hearing. Doctors Egle, Barr, and Kruglik examined the defendant. Dr. Egle testified that based upon his observations, the defendant could not understand the proceedings against him. Dr. Barr testified that the defendant was incapable of understanding cause and effect relationships and the consequences of his actions. Dr. Kruglik, however, explained the defendant understood that Dr. Kruglik was a psychiatrist conducting a fitness examination and that the defendant understood the function of the court and the proceedings. The defendant told Dr. Kruglik that he didn't know anyone carried a gun on the day of the murder and that he was "shocked" when the shooting occurred. The trial judge determined the defendant was fit to stand trial.

The record indicates the trial court recognized that it was required to determine the facts and make the ultimate decision as to the defendant's fitness. The court determined that based upon the evi-

dence presented, the defendant was fit to stand trial. Under these circumstances, we find no abuse of discretion.

Defendant next maintains that the trial judge committed reversible error by refusing to ask the jurors about their attitudes toward mental retardation during *voir dire*. In the instant case, defendant submitted questions pertaining to the prospective jurors' views of mental retardation. The defendant contends that the questions submitted were designed to discover any potential bias or prejudice regarding that condition. The trial judge did not ask the submitted questions. The trial judge concluded that asking the questions would delve too far into the personal lives of the prospective jurors. The trial judge also noted that if he allowed an open-ended question to be asked he risked possibly prejudicing the other prospective jurors.

The State asserts the defendant waived any alleged error. Specifically, the State contends the defendant did not object in his post-trial motion to the questions relating to mental retardation. Rather, the defendant's objection in his post-trial motion relates to questions submitted and not asked regarding "the insanity defense." The State argues that defense counsel's failure to object to the specific questions regarding mental retardation waived the issue.

■ It is well settled that a defendant must object to alleged errors at trial and include such errors in his post-trial motion or the errors are deemed waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) The State's argument, however, elevates form over substance. In his post-trial motion, the defendant objected to the trial court's refusal to ask the questions in *voir dire* tendered by the defendant. The questions the trial court refused to ask the prospective jurors pertained to the prospective jurors' views of mental retardation. We believe, therefore, the defendant properly preserved the issue for appeal.

■ It is well established that limiting the scope of *voir dire* questioning may constitute reversible error where its effect is to deny a party a fair opportunity to probe an important area of potential bias or prejudice among prospective jurors. (*Gasiorowski v. Homer* (1977), 47 Ill. App. 3d 989, 365 N.E.2d 43.) The purpose of the *voir dire* examination is to permit counsel to ascertain whether the minds of prospective jurors are free from bias and prejudice. (*People v. Witted* (1979), 79 Ill. App. 3d 156, 398 N.E.2d 68.) *Voir dire* examination is to be initiated by the trial judge and may be supplemented by the parties at the court's discretion. (*People v. Pitts* (1982), 104 Ill. App. 3d 451, 432 N.E.2d 1062.) However, the scope and extent of *voir dire* is left to the sound discretion of the trial judge. *People v. Morgan*

(1986), 112 Ill. 2d 111, 492 N.E.2d 1303.

■ Defendant cites *People v. Pitts* (1982), 104 Ill. App. 3d 451, 432 N.E.2d 1062, for the proposition that a trial judge's failure to make pertinent inquiries during *voir dire* amounts to reversible error. In *Pitts* the trial judge refused to ask the jurors whether they had any viewpoint on the defense of insanity in a criminal case. In contrast, the trial judge in the instant case specifically asked the jurors whether they had any feelings for or against the use of the insanity defense in a criminal case. We note that the precise issue the jurors would eventually encounter in the instant case was whether the insanity defense applied, and defense counsel's submitted question whether any of the prospective jurors' relatives suffered from mental retardation was tangential to the insanity issue. Therefore, the question asked by the judge at *voir dire* was appropriately directed at an area of potential bias against the defendant. Accordingly, we believe the trial judge did not abuse his discretion in failing to ask the questions submitted by defense counsel to the prospective jurors during *voir dire*.

We next address the issue of whether it was reversible error for the trial judge to allow testimony concerning the defendant's prior juvenile history to be introduced. Prior to Dr. Barr's testimony, defense counsel moved *in limine* to preclude the prosecution from eliciting the fact that Dr. Barr's examination of defendant was made in conjunction with an unrelated juvenile case. Defendant contends that the court erred in denying the motion since the probative value of the evidence was far outweighed by its prejudicial effect.

■ The State contends the defendant waived this issue by not properly objecting both at trial and in a written post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) The State contends that the defendant did not object to the questions on cross-examination and therefore waived the issue on appeal. The defendant contends that there was a pretrial order forbidding the introduction of evidence regarding the defendant's juvenile past and that the line of questioning violated such order. The defendant also asserts that the issue was properly preserved for appeal. The *Enoch* rule, however, requires an objection at trial and in a written post-trial motion. The defendant did not object to the question on cross-examination as required by *Enoch*. We believe, therefore, defendant waived this issue on appeal.

Moreover, when the defense of insanity is raised, almost every aspect in a defendant's life is relevant. (*People v. Vanda* (1982), 111 Ill. App. 3d 551, 444 N.E.2d 609.) It is well established that wide latitude

will be allowed in cross-examination of an expert witness. (*People v. Buggs* (1986), 112 Ill. 2d 284, 493 N.E.2d 332.) Relevancy, however, remains a prerequisite for the admission of evidence. (*People v. Free* (1983), 94 Ill. 2d 378, 447 N.E.2d 218.) Therefore, when an expert witness expresses an opinion as to a defendant's sanity, the scope of the inquiry into the basis for that opinion is broad. *People v. Buggs* (1986), 112 Ill. 2d 284, 493 N.E.2d 332.

The record shows that Dr. Barr offered expert testimony as to the defendant's sanity based upon tests administered to the defendant. On cross-examination, the prosecutor elicited from Dr. Barr that at the time of the test the defendant was facing "legal difficulties." The prosecutor did not elaborate on the nature of the legal difficulties, and we believe the defendant was not prejudiced by such comment.

In addition, if eliciting this statement constitutes error, it is harmless. If evidence of the defendant's criminal record is later introduced, any error in the prosecutor's reference to such record is harmless. (*People v. Jones* (1987), 155 Ill. App. 3d 641, 508 N.E.2d 357.) In the instant case, defense counsel introduced testimony about his criminal history. Indeed, during direct examination, Dr. Barr, a defense witness, explained that part of defendant's problems related to depression defendant felt at receiving probation while his brother received imprisonment for a previous offense. In the instant case, we believe the trial court's denial of defendant's motion *in limine* did not constitute reversible error.

The defendant next contends the prosecutor committed reversible error during the cross-examination of Dr. Barr, in objecting to defense counsel's closing argument, and in his closing argument. The State initially asserts that defense counsel waived these issues on appeal by failing to properly preserve these issues on appeal. (See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) The record indicates that defense counsel properly preserved the objections to the prosecutor's closing argument and the statement made by the prosecutor during defense counsel's closing argument. Defense counsel, however, did not properly preserve the objections to the cross-examination of Dr. Barr.

As to the merits of these objections, defendant first argues the prosecutor's cross-examination of Dr. Barr insinuated that Dr. Barr violated the law by releasing the defendant after an earlier examination of defendant, and that Dr. Barr could have somehow prevented the murder from occurring by having defendant admitted in a hospital. The defendant asserts that the prosecutor improperly attempted to discredit Dr. Barr and that such line of questioning constitutes er-

ror. Although we believe the prosecutor's attempt to discredit Dr. Barr was improper, such conduct does not amount to plain error.

■ Defendant next contends that reversible error occurred when the prosecutor asserted that the defense counsel "lied" during her closing argument. Comments made in closing argument not based on the evidence are improper. (*People v. Holman* (1984), 103 Ill. 2d 133, 469 N.E.2d 119.) Improper remarks, however, are harmless when the trial judge acts promptly to remove the remarks from the jury's consideration. (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) In the instant case, the prosecutor objected to a statement made by defense counsel at closing argument and commented that it was an "absolute total lie." At that point, the trial judge defined lie and asked the prosecutor to withdraw the remark. The prosecutor promptly withdrew his remark. The trial judge further instructed the jury to disregard anything said by the lawyers that is not in evidence. Accordingly, we conclude the prosecutor's remark was harmless error.

Next, the defendant contends that the prosecutor engaged in an inflammatory and prejudicial closing argument. During the prosecutor's closing argument he stated that Dr. Barr and Dr. Egle had "the audacity to come in here and condemn mentally retarded people." The defense counsel objected to the comment, and the trial judge sustained the objection. Defendant contends this statement was so prejudicial that it warrants a new trial.

We note that a prosecutor has wide latitude during closing argument. (*People v. Richard* (1980), 88 Ill. App. 3d 247, 410 N.E.2d 459.) Improper remarks in closing argument will not constitute reversible error unless they result in substantial prejudice to the defendant. (*People v. Kinion* (1982), 105 Ill. App. 3d 1069, 435 N.E.2d 533.) In the instant case, the record does not reveal the prosecutor's comments regarding the "audacity" of defendant's expert witnesses substantially prejudiced the defendant. We conclude, therefore, that such comment does not amount to reversible error.

Defendant also argues the guilty but mentally ill (GBMI) verdict form (Ill. Rev. Stat. 1987, ch. 38, par. 115—4(j)) is unconstitutional. Defendant contends the GBMI verdict violates his due process rights under the Illinois and Federal Constitutions. He asserts that "[a]uthorizing a jury to find a defendant guilty but mentally ill deprives an accused of liberty without due process of law because it introduces into the jury's fact-finding task a consideration that is wholly extraneous to the jury's function, it diverts the jury's attention from its primary duty, and it is unconstitutionally vague."

■ The State contends that the defendant waived this issue on

appeal. In order to challenge the constitutionality of a statute, the defendant must preserve the issue at trial and in a written post-trial motion. (See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124; *People v. Kerker* (1984), 121 Ill. App. 3d 1072, 460 N.E.2d 771.) In the instant case, the defendant's failure to properly preserve the issue at trial or in a written post-trial motion constitutes a waiver of such issue on appeal.

Moreover, defendant's challenge to the constitutionality of this statute is not novel. In *People v. DeWit* (1984), 123 Ill. App. 3d 723, 463 N.E.2d 742, the defendant asserted that the GBMI verdict form promotes jury confusion and encourages a finding of GBMI as a compromise. The court disagreed and noted that section 115—4(j) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—4(j)) expresses its requirements in simple and clear language and that the definition of mental illness provides meaningful standards for a jury to make required findings. *People v. DeWit* (1984), 123 Ill. App. 3d 723, 463 N.E.2d 742.

In addition, this court has upheld the constitutionality of the GBMI statute when faced with defendant's procedural due process argument. In *People v. Fierer* (1987), 151 Ill. App. 3d 649, 503 N.E.2d 594, *aff'd on other grounds* (1988), 124 Ill. 2d 176, 529 N.E.2d 972, the defendant proposed that the GBMI statute violated his procedural due process rights. This court disagreed and held that the introduction of the GBMI verdict form into a criminal trial does not constitutionally deprive the defendant of procedural due process of law. (151 Ill. App. 3d at 660 (Heiple, J., concurring).) We note the supreme court affirmed this court's decision without addressing the due process issue.

In addition, section 115—4(j) provides in part: "When the affirmative defense of insanity has been presented during the trial, the court, where warranted by the evidence, shall also provide the jury with a special verdict form of guilty but mentally ill ***." (Ill. Rev. Stat. 1987, ch. 38, par. 115—4(j).) Defendant submits the language "where warranted by the evidence" is unconstitutionally vague.

Instructing the jury on the elements of an offense is within the trial court's discretion. (107 Ill. 2d R. 451.) This standard is consistent with the present standard that an instruction should be submitted where there is any evidence which supports a party's theory of the case. (See *People v. Carr* (1986), 149 Ill. App. 3d 918, 501 N.E.2d 241.) Likewise, it is the trial judge's duty to give an instruction or verdict form when enough evidence has been presented to "support" or "warrant" the giving of such. Accordingly, we find the GBMI ver-

dict form is not unconstitutionally vague.

■■■ Defendant finally contends that his nonextended, 60-year sentence was excessive. Pursuant to Supreme Court Rule 615(b)(4), we have the discretionary power to reduce an excessive sentence. (107 Ill. 2d R. 615(b)(4).) However, a trial court's sentencing decision will not be disturbed absent an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, §11.) Here, the defendant argues the trial court abused its discretion in imposing the nonextended term of 60 years' imprisonment.

With respect to the nature and circumstances of the particular offense, we note that in the instant case, defendant was amongst a group of people involved in a shooting, another member of the group brought the gun used in the shooting, and defendant has repeatedly stated that he did not know a member of the group carried a gun the day of the murder. Taken in its proper context, we believe the defendant's actions do not compare to a calculated, premeditated murderer.

With respect to the issue of rehabilitation, we have reduced a defendant's sentence on the basis of rehabilitative potential where a defendant came from a poor social environment and had a limited education (see *People v. Kosanovich* (1979), 69 Ill. App. 3d 748, 387 N.E.2d 1061), where a defendant has expressed a desire to continue his education (see *People v. Nelson* (1982), 106 Ill. App. 3d 838, 436 N.E.2d 655), and where the defendant was 16 years old (see *People v. Rickard* (1981), 99 Ill. App. 3d 914, 425 N.E.2d 1317). In the instant case, defendant was found to be a mildly retarded 17-year-old at the time of the incident by the State's psychiatrist.

In light of the circumstances presented, the defendant's age and his mild mental retardation, we believe that defendant's rehabilitative potential was not given adequate consideration. Therefore, we affirm the defendant's murder conviction but reduce the sentence from 60 years to 30 years.

Judgment affirmed as modified.

SCOTT and WOMBACHER, JJ., concur.