THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JIMMY ARCE, Defendant-Appellant.

First District (3rd Division)   No. 1—96—0128

Opinion filed June 30, 1997.

Steven R. Decker, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Katherine Schweit, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAHILL delivered the opinion of the court:

After a jury trial defendant, Jimmy Arce, was convicted of possession of a controlled substance with intent to deliver and was sentenced to 20 years' imprisonment. Defendant appeals. Among other issues, we review the denial of a *Franks* hearing where defendant and the State relied upon affidavits from the same person, and

the refusal of the trial court to inquire of prospective jurors if they would tend to believe the testimony of a police officer over that of other witnesses. We affirm.

At trial, Detective Graf testified that on March 7, 1994, a search warrant was issued for a residence in Chicago and the person of Jimmy Arce. Graf executed the search warrant along with a number of other officers. Graf knocked at the front door and announced his office and purpose. There was no response. The officers waited a few seconds and then made a forcible entry, using a sledge hammer on the front door lock.

When the officers found no one in the home they began their search. On a closet shelf in the front hall, Detective Graf found one large plastic bag and four smaller bags containing white powder, along with a battery-powered scale and correspondence addressed to defendant. He also saw men's and women's coats in the closet. After the search was completed, Graf left a copy of the search warrant on the kitchen table along with a note explaining what happened.

Graf testified that defendant telephoned him at about 6 p.m. later the same day. Defendant told Graf he would like to surrender the following day, but defendant was arrested at his home at approximately 9 p.m. that night.

Evidence at trial established that a fingerprint on the correspondence matched a fingerprint of someone other than defendant. Defendant's fingerprint matched a fingerprint taken from the scale. No cocaine residue was found on the scale. The condition of the plastic bags did not permit fingerprint analysis.

Tests established that the white powder in the bags was cocaine. The total weight of the cocaine was more than 821 grams. The substance was 87.4% pure.

Chicago police detective Karen Morrisette qualified to testify as an expert in the buying and selling of controlled substances. She testified that, on the street, a narcotics user would buy between a quarter of a gram to a gram of powder cocaine or a tenth of a gram in rock form. A quarter gram would sell for $25. The purity level was usually 80%. She estimated that 270 grams of cocaine could be worth as much as $280,000. She testified that the electronic scale entered as an exhibit is the kind typically used by drug sellers.

The jury found defendant guilty of possession of a controlled substance with intent to deliver. He was later sentenced to 20 years in prison. Defendant's motion for a new trial was denied.

Defendant first argues that he was not proven guilty beyond a reasonable doubt. He contends the evidence at trial failed to establish that he had power or control over the drugs. Defendant stresses

that: he was not present at the time of the search; his fingerprints were not on the bags of cocaine and correspondence found in the front closet; only a fingerprint on the scale matched his fingerprint; and no cocaine residue was found on the scale.

■ To prove the crime of unlawful possession, the State must establish that the defendant knew of the presence of narcotics and that the narcotics were in his immediate and exclusive control. *People v. Embry*, 20 Ill. 2d 331, 334, 169 N.E.2d 767 (1960). Knowledge can be established by evidence of acts, declarations or conduct from which an inference may be fairly made that a defendant knew of the existence of the narcotics at the place where they were found. *Embry*, 20 Ill. 2d at 334. The trier of fact must decide whether the accused had such knowledge. *Embry*, 20 Ill. 2d at 334. Physical possession need not be directly proven. A conviction can be sustained when constructive possession can be inferred from the facts. *People v. Stamps*, 108 Ill. App. 3d 280, 292-93, 438 N.E.2d 1282 (1982). Constructive possession is defined as " 'that which exists without actual personal present dominion ***, but with an intent and capability to maintain control and dominion.' " *Stamps*, 108 Ill. App. 3d at 292, quoting *People v. Fox*, 24 Ill. 2d 581, 585, 182 N.E.2d 692 (1962).

■ Findings of the trier of fact will not be disturbed on review unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of guilt. *Stamps*, 108 Ill. App. 3d at 292-93. Here, mail addressed to defendant was found in a closet of the house. His fingerprint was found on the scale, next to the cocaine. The evidence supports a jury finding of constructive possession and control of the cocaine.

Defendant next argues that the denial of his motions for a *Franks* hearing and to quash the search warrant was error. *Franks v. Delaware*, 438 U.S. 154, 155-56, 57 L. Ed. 2d 667, 672, 98 S. Ct. 2674, 2676 (1978).

According to the search warrant complaint, a confidential informant told Graf that on March 7, 1994, the informant went to 2955 N. Kolmar, known to the informant to be the residence of defendant, and at that time, defendant showed him a loaded gun in the front closet. The informant and defendant then walked to a restaurant with the gun in defendant's possession. Defendant left the informant at the restaurant and said he was going home. Graf stated that he has known the informant for three years. The last six times Graf received information about a firearm from the informant he recovered a firearm.

■ Defendant filed a motion to quash the search warrant and requested a *Franks* hearing before trial. Probable cause must be

established before a search warrant may be issued. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Whether probable cause exists for the issuance of a search warrant is a question to be decided by the judge before whom the complaint for a search warrant is made. *People v. Velez*, 204 Ill. App. 3d 318, 329, 562 N.E.2d 247 (1990). Probable cause means that the affiant relied on information that was trustworthy in and of itself and this information led him to believe that the law was being broken and that evidence of it was in the premises or on the person to be searched. *People v. Francisco*, 44 Ill. 2d 373, 376, 255 N.E.2d 413 (1970). When a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the fourth amendment requires that a hearing be held at the defendant's request. *Franks*, 438 U.S. at 155-56, 57 L. Ed. 2d at 672, 98 S. Ct. at 2676.

■ As part of his preliminary showing, defendant established that he was on an electrical home monitoring system at the time of the arrest. Defendant and the State each submitted an affidavit from the president of a private firm that operates the monitoring system in conjunction with the Illinois Department of Corrections. The president stated, in the affidavit submitted by defendant, that on March 6: defendant's alarm did not sound; the radio frequency was not lost; defendant was at home; and the unit was functioning properly. The president's affidavit submitted by the State said that he reviewed defendant's records from March 6 and 7 and that the maximum distance defendant could have travelled from his residence is 100 feet. But the president further stated that if defendant had exceeded this distance he could have done so for up to five minutes without detection.

Defendant's counsel argued at the hearing that the restaurant was approximately two blocks from defendant's home and that defendant could not jog to and from the restaurant within five minutes.

The court held an *in camera* inspection of Graf's confidential informant file. The court then stated that it believed the informant existed, that the officer had known him $3^1/2$ years, and the informant had been reliable. The court denied defendant's motion for a *Franks* hearing. We review such a denial under an abuse of discretion standard. *People v. Pearson*, 271 Ill. App. 3d 640, 643, 648 N.E.2d 1024 (1995).

A substantial showing requires something more than mere denials on the one hand and less than proof by a preponderance of the evidence on the other. *Pearson*, 271 Ill. App. 3d at 643. "The determina-

tion in a given case must be based upon a careful balancing of the statements in the warrant affidavit versus those in support of the defendant's challenge to the warrant." *People v. Lucente*, 116 Ill. 2d 133, 152, 506 N.E.2d 1269 (1987). Defendant's preliminary showing did not support that the officer included intentionally false statements in the warrant complaint. The trial court found that the officer reasonably relied on the information of the confidential informant after reviewing the officer's confidential informant file. We note that the argument of counsel about the distance defendant could travel in five minutes was nothing more than an opinion. The denial of a *Franks* hearing was not an abuse of discretion.

■ Defendant next argues that the State made improper remarks during closing argument, denying him the right to a fair and impartial trial and the right to due process and equal protection. Defendant contends that the State's repeated references to defendant's door being locked was an improper inference of exclusive dominion and control of the drugs.

A prosecutor may draw reasonable inferences from the evidence presented and state such inferences to the jurors. *People v. Morrison*, 137 Ill. App. 3d 171, 184, 484 N.E.2d 329 (1985). Evidence of a locked door, established by the manner of entry, coupled with mail addressed to defendant and his fingerprint on the scale, could warrant reasonable inferences tending to show that defendant had exclusive dominion and control of the house and the drugs. The weight to be given to such inferences is for the trier of fact. *People v. Collins*, 106 Ill. 2d 237, 277-78, 478 N.E.2d 267 (1985).

Defendant next argues that the court erred in denying his request for a *voir dire* question. Defendant asked that potential jurors be examined as to whether they were more likely to believe a police officer over other witnesses. The court refused to ask the question.

■ *Voir dire* examination allows counsel to ascertain whether the prospective jurors' minds are free from prejudice. *People v. Witted*, 79 Ill. App. 3d 156, 164, 398 N.E.2d 68 (1979). Limiting the scope of *voir dire* may constitute reversible error when doing so effectively denies a party fair opportunity to explore potential bias or prejudice. *People v. Newell*, 196 Ill. App. 3d 373, 378, 553 N.E.2d 722 (1990). But the scope of *voir dire* is left to the sound discretion of the trial judge. *Newell*, 196 Ill. App. 3d at 378.

■ Defendant argues that *People v. Oliver*, 265 Ill. App. 3d 543, 637 N.E.2d 1173 (1994), supports his argument. We disagree. In *Oliver*, the defendant was charged with criminal sexual assault and armed robbery. *Oliver*, 265 Ill. App. 3d at 544. The judge asked members of the venire to stand if they or someone in their family

had ever been the victim of armed robbery, rape, sexual assault or homicide. He then asked those who stood if they could be impartial. *Oliver*, 265 Ill. App. 3d at 549-50. Those standing who became part of the jury said they could be impartial. The defendant claimed that he was prejudiced because he was not allowed to inquire of each potential juror whether the juror had been a victim of or involved in a specific crime. We reversed, stating that the trial court abused its discretion in failing to ask the potential jurors individually if they were victims of the specific crimes charged in the case before the court. *Oliver*, 265 Ill. App. 3d at 550-51. Nothing analogous happened here.

While we agree that refusing to ask the question defendant submitted in another case might be an abuse of discretion, we do not find so here.

While a question to detect whether a juror would ascribe heightened credibility to a police officer is quite common at *voir dire*, defendant cites to no case that holds it must be asked as a matter of law. It remains within the discretion of the trial court. *Newell*, 196 Ill. App. 3d at 378. Suitable inquiry is permissible to ascertain whether a juror has a bias, prejudice or opinion that would impair his ability to make a fair determination of the issues before the court. *People v. Lobb*, 17 Ill. 2d 287, 300, 161 N.E.2d 325 (1959).

In this case the credibility of police testimony was not an issue. The facts testified to by Detective Graf about execution of the warrant, entry to the house, and what was found inside were not at issue. The analysis of the police laboratory was stipulated testimony. The expert testimony of Officer Morrisette was uncontested. Had defendant made an offer of proof at *voir dire* that he intended to attack the credibility of the police officers about evidence essential to the State's case, we might well have found an abuse of discretion in the failure of the court to ask the question. On this record we find none. The sole issue for the jury here was not the credibility of the officers, but whether the uncontested facts were sufficient to establish constructive possession.

■ Finally, defendant contends that the court erred when it admitted hearsay evidence that the search warrant was executed for defendant's residence and for the defendant. Defendant relies on *People v. Garcia*, 109 Ill. App. 3d 142, 152, 440 N.E.2d 269 (1982), for the proposition that the reference to the search warrant was an improper use of hearsay. The facts in *Garcia* are far afield.

In *Garcia*, the court found the State's repeated questions to the witnesses and repeated references in opening and closing arguments to information from a confidential informant contained in a search

warrant were prejudicial. The *Garcia* court concluded that repeated references could have led the jury to believe that the defendant was responsible for bringing cocaine to an apartment and that the defendant was the occupant of the apartment. Then, in an apparent attempt to lend credibility to the hearsay information of the informer, the prosecutor demonstrated through testimony that was irrelevant to an issue properly before the jury how the police and State's Attorney's office "authenticate" a warrant. *Garcia*, 109 Ill. App. 3d at 152-54. In effect, the facts alleged in the warrant were offered at trial to lend credence to the facts the State was attempting to establish at trial. That did not happen here.

A police officer may recount the steps taken in an investigation and may describe the events leading up to a defendant's arrest when such testimony is necessary and important to fully explain the State's case to the trier of fact. *People v. Simms*, 143 Ill. 2d 154, 174, 572 N.E.2d 947 (1991).

Unlike *Garcia*, neither the police officer in his testimony nor the assistant State's Attorney in examination or argument made reference to the confidential informant's hearsay allegations. When asked why Graf went to defendant's address, Graf testified that he was executing a search warrant for defendant's residence and defendant. This reference to the search warrant is permissible under *Simms*.

As part of our judgment, we grant the State's request for costs for defending this appeal and assess defendant $150 in accordance with *People v. Agnew*, 105 Ill. 2d 275, 473 N.E.2d 1219 (1985), and *People v. Nicholls*, 71 Ill. 2d 166, 374 N.E.2d 194 (1978).

Affirmed.

COUSINS, P.J., concurs.

JUSTICE LEAVITT, dissenting:

I would reverse and remand this matter for the court's failure to afford defendant his right to a *Franks* hearing.

The defendant in his motion for a *Franks* hearing asserts the complaint for search warrant submitted by Officer Graf contains untrue statements, which are deliberately misleading. The affidavit states in part:

"The CI stated to me that in the evining [*sic*] hours of 06Mar94, that he had gone to the address of 2955 N. Kolmar, Chicago, Cook County and that he was met at the front door to that single family residence by a subject known to him as Jimmy Arce. The CI described Jimmy Arce asa M/WH 28 yoa, 5'11", 160 lbs., light

complexion. The CI stated that Jimmy Arce allowed the CI to enter the house and that Jimmy Arce opened the front closet door and showed the CI a 9mm semi-automatic pistol. The CI stated that the subject Jimmy Arce took the magazine out of the pistol and showed the CI that it was loaded. The CI stated to me that Jimmy Arce then placed the pistol into his waistband and at that time the CI and Jimmy Arce waked [sic] down the street to the Burger King restaurant at Kolmar and Diversey. The CI stated that Jimmy Arce left him at the restaurant, saying that he was going back home."

The defendant in his motion stated that the factual allegations found in the complaint are untrue because (1) he denies there was any confidential informant in his home on March 6, 1994; (2) he denies having a gun within his home on March 6, 1994, or displaying a weapon to anyone on that date—a matter confirmed by the subsequent search, which failed to produce a weapon; and (3) he denies walking with the confidential informant to the Burger King restaurant located at Kolmar and Diversey (2800 North), two blocks away from his home.

In his motion defendant stated that on March 6, 1994, he was on early release from the Illinois Department of Corrections. He further stated he was on an electronic home monitoring unit on that date. He provided an affidavit from Michael Reeves, the president of Comguard Corporation, which has a contract with the Illinois Department of Corrections to provide monitoring of inmates who have been granted early release. In his affidavit, Reeves states that the defendant was on a monitor on March 6, 1994, and that the unit was functioning properly on that date. Finally, Reeves attests that there was no loss of radio frequency for the inmate's monitor on March 6, 1994, confirming the defendant was at his residence on that date. The State also obtained an affidavit from Reeves in which he allowed that, should the defendant travel more than 100 feet from his home, he could remain undetected for up to five minutes.

As the majority correctly states, a defendant is entitled to a *Franks* hearing only where he is able to make a "substantial preliminary showing" that the affiant, either knowingly and intentionally or in reckless disregard of the truth, included a false statement in the warrant affidavit and that, absent the false statement, no probable cause to issue the warrant otherwise exists. See *People v. Lucente*, 116 Ill. 2d 133, 147, 506 N.E.2d 1269 (1987). However, the supreme court has recognized that special considerations apply when a defendant offers an alibi-type defense in challenging a warrant based upon information supplied by a confidential informant. In such

cases, the supreme court has cautioned that the rule stated by the majority should not be applied "so inflexibly as to make hearings unattainable." *Lucente*, 116 Ill. 2d at 149. Given the fact that Graf's affidavit in support of a warrant in this case was based upon information supplied by a confidential informant and the fact that defendant offered corroborative evidence of what is essentially an alibi, I believe the trial court abused its discretion in denying defendant a full *Franks* hearing.

The supreme court in *Lucente* recognized the "inherent dilemma" faced by a defendant seeking a *Franks* hearing when the underlying warrant is based upon information supplied by a confidential informant. *Lucente*, 116 Ill. 2d at 149. As the *Lucente* court noted:

> "While it is true that the defendant's *ultimate* burden is to show by a preponderance of the evidence that the affiant-officer made deliberate or reckless false statements, *Franks* does not require that the defendant disprove every other possibility at the preliminary stage. If an informant's identity—or very existence—is unknown, a defendant obviously lacks the very information necessary to determine the source of the false statements. If such a preliminary showing were demanded, no hearing could ever result in cases in which all the information to establish probable cause came from an unnamed informant. One need not be overly cynical to realize that such a rule would enable the police to insulate perjury from discovery by the simple expedient of a fabricated informant, and thereafter 'remain confident that the ploy was worthwhile' [citation].
>
> \*\*\* [Such an inflexible application of *Franks*] would permit the very evisceration of the probable-cause requirement which *Franks* seeks to prevent." *Lucente*, 116 Ill. 2d at 149-50.

Accordingly, the *Lucente* court rejected the assertion that proof of an alibi alone will always be insufficient to justify a *Franks* hearing. *Lucente*, 116 Ill. 2d at 148.

Rather, what is important in these cases is the "quantity and quality" of corroboration accompanying the offer of an alibi. See *Lucente*, 116 Ill. 2d at 148. Thus, a lone affidavit from the defendant himself may, in certain circumstances, justify a *Franks* hearing. See *People v. Allen*, 158 Ill. App. 3d 602, 606-07, 511 N.E.2d 824 (1987) (remanding for *Franks* hearing where the defendant was not the person named in the warrant and where the defendant submitted an affidavit stating she had been home alone on the night in question). The quality of the corroboration is equally as important. Affidavits from persons not biased in the defendant's favor carry greater weight than those with obvious bias. See *Lucente*, 116 Ill. 2d at 154; *People v. Phillips*, 265 Ill. App. 3d 438, 445, 637 N.E.2d 715 (1994) (affirming

trial court's refusal to grant a *Franks* hearing where only affidavits in support of defendant's alibi were from defendant, his mother, and his friend); *People v. Tovar*, 169 Ill. App. 3d 986, 992, 523 N.E.2d 1178 (1988) (affirming trial court's refusal to grant a *Franks* hearing where only affidavits in support of defendant's alibi were from defendant and his wife). The affidavits must be sufficiently detailed so as to subject the affiants to the penalties of perjury if untrue. See *Lucente*, 116 Ill. 2d at 154. Moreover, affidavits containing mere denials (the "I didn't do it" type) are less persuasive than those that affirmatively establish the impossibility of the informant's version of events. See *Lucente*, 116 Ill. 2d at 154; *People v. Pearson*, 271 Ill. App. 3d 640, 644, 648 N.E.2d 1024 (1995) (remanding for a *Franks* hearing where defendant alleged he was not on the premises at time of transaction with informant and defendant had otherwise "airtight" alibi); *Phillips*, 265 Ill. App. 3d at 445 (affirming trial court's refusal to grant a *Franks* hearing where one of defendant's alibi affiants swore only that he was asleep at the time and location of the alleged transaction, as transaction could have occurred while affiant was asleep); *Tovar*, 169 Ill. App. 3d at 992 (affirming trial court's refusal to grant a *Franks* hearing where defendant admitted being home at the time of the informant's alleged transaction and affidavit did not establish impossibility of the informant having access to the apartment).

In the present case, defendant has essentially alleged an alibi, albeit an electronic one. Contrary to the majority's assertion that defendant offered "nothing more than an opinion" regarding the defendant's alleged trip to Burger King with the informant, the record shows specific facts that suggest the scenario recounted in Graf's affidavit was implausible. Graf stated that the confidential informant went to the defendant's residence at 2955 North Kolmar and thereafter *walked* with him to the Burger King at Diversey and Kolmar. Defendant's assertion in his motion that this is a distance of approximately two blocks is unchallenged. Reeves' affidavit, which provides that defendant could have traveled 100 feet and then remained outside that range for up to five minutes without causing a loss of signal, allows little time to walk the four blocks to and from the Burger King. Time and distance are subject to objective measure.

Reeves is not shown to be biased in favor of defendant in this case. Moreover, defendant has certainly supported his "alibi" with more than mere denials—Reeves' affidavit strongly suggests, given the home monitoring technology involved, the alleged trip was not physically possible. The evidentiary burden on a defendant at such a preliminary stage is considerably less than the burden he will face should a full hearing eventually be granted. While a defendant's

mere denials will not suffice, a defendant need not present proof of the affiant's perjury by a preponderance of the evidence at such an early stage. *Pearson*, 271 Ill. App. 3d at 643. It is uncontested here that, absent the allegedly false statements included in the warrant affidavit, no probable cause to issue the warrant existed. The trial judge's *in camera* confirmation that an informant did, in fact, exist does not address the issue regarding the falsity of information claimed to be found in the complaint for the search warrant. Defendant made a substantial preliminary showing of an alibi corroborated by unbiased, sworn testimony, as required for a *Franks* hearing.

For the foregoing reasons, I would remand this matter for a *Franks* hearing.